CHARLES W. JAYNES, ALBERT L. POPE AND HENRY O. CUSHMAN, TRUSTEES u/w OF CHARLES P. JAYNES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62503.   Promulgated October 31, 1933.

*Charles M. Rogerson, Esq.*, for the petitioners.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

ARUNDELL: Under the provisions of the testamentary trust administered by these petitioners, the income was to be paid to the decedent's two children for life, and upon the death of both the trust was to terminate and $25,000 of the corpus to be paid to each grandchild of the decedent, and the balance to specified charitable organizations. At the time of decedent's death the value of the trust corpus was $391,940.82, and in the taxable year, 1929, it was $465,334.99.

The theory of petitioners is that only $50,000 of the corpus will ever be needed to pay the individual beneficiaries, hence the gain derived in 1929, being added to corpus, must eventually go to charity and should be treated as permanently set aside for charitable purposes. The applicable statute, section 162 of the Revenue Act of 1928, permits the deduction from gross income of trusts of the part thereof that is " paid or permanently set aside for " charitable and similar organizations.

At the time of decedent's death there were but two grandchildren, none-have been born since, and those two are still living. In the taxable year 1929, decedent's son Charles, and the wife of Charles, were both 51 years of age. They were the parents of decedent's two grandchildren. Decedent's other child, Harriet, was married but has never had any children. In 1929 she was 53 years of age.

The parties have stipulated that " in order that the principal shall be exhausted by payments [to the grandchildren] of $25,000 each, there must be sixteen more grandchildren " of the decedent. Petitioners rely on *Boston Safe Deposit & Trust Co. et al, Executors*, 20 B.T.A. 1159, to sustain their claim. That was an estate tax case where the testator provided for annuities, during the life of his three daughters, for every grandchild of his that might be born after his death, with remainder over to charity. The executors of the estate, for the purpose of computing the value of the net estate, claimed deduction of a minimum amount which was certain to go to the charitable organizations. In calculating such amount recognition was given to the presumption of possibility of issue, regardless of age. Evidence was offered to show that there was no proba-

bility of additional grandchildren of the testator, but the executors nevertheless assumed the possibility of five being born as a safe maximum. On this basis and taking into account other factors that might by any possibility reduce the charitable remainder, they arrived at an amount which they said would not be impaired even though grandchildren of the testator were "born with incredible rapidity and in improbable numbers," and which would, with reasonable certainty, go to charity. In our opinion in that case we alluded to the presumption in favor of possibility of issue and said that "if we had to determine just how many might possibly have been born, our problem would be too difficult for human judgment and knowledge." The petitioners here are asking us to solve the problem which in the cited case we confessed was beyond our abilities. We are bound by the presumption of possibility of issue, cf. *George E. Farrington et al., Executors*, 13 B.T.A. 274; affd., 30 Fed. (2d) 915; *Guaranty Trust Co. et al, Executors*, 27 B.T.A. 550, and we cannot say to what extent this should be carried, in point of number, to determine the portion of income for the taxable year that can be ascertained with reasonable certainty will remain for charitable purposes. Any attempt to determine the extent to which the trust fund may be depleted by the birth of additional children must necessarily depend entirely on a guess as to the number, and this would lead from the proper office of the presumption into the realm of pure speculation. The statute does not require any such venture. Cf. *Humes* v. *United States*, 276 U.S. 487.

In *Boston Safe Deposit & Trust Co. et al, Executors*, 26 B.T.A. 486, we had the income tax sequel of the estate tax case reported under the same name at 20 B.T.A. 1159. In the income tax case, which has been affirmed on appeal, 66 Fed. (2d) 179, the executors claimed a deduction of at least the earnings of the amount of the fund which we determined in the estate tax proceeding to be the minimum deductible value for the remainder left to charity. We denied the deduction, saying in part:

The appraisal of an apparently stable and liquid fund of securities for estate-tax purposes is a far different matter from that of gauging the recurring yearly return from such a fund, from the viewpoint of the income tax thereon.

The same thing may be said here, with full recognition of the possibility in that case of the invasion of corpus to pay annuities. We know not to what extent the corpus may be depleted by the contingencies ever present in the management of property. We are accordingly unable to find that any part of the income was "permanently set aside" for charitable uses within the meaning of the statute and the respondent's refusal to permit the deduction sought is affirmed.

*Decision will be entered for the respondent.*